Jane E. Willis (JW5192)                                              ECF CASE
Michele Cerezo-Natal (MC4497)
ROPES & GRAY LLP
45 Rockefeller Plaza
New York, New York 10111
(212) 841-5700

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                      :
HOUGHTON MIFFLIN COMPANY,                             :
                                                      :
                              Plaintiff,              :        No.
                                                      :
            v.                                        :        COMPLAINT
                                                      :
JAY KIMMELMAN, DANIEL YATES and                       :
JAY KIMMELMAN, as Shareholder                         :
Representative of Edusoft,                            :
                                                      :
                              Defendant.              :
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Plaintiff Houghton Mifflin Company ("Houghton Mifflin" or "Buyer") by its

attorneys, for its complaint, hereby alleges as follows:


## Nature of the Action

        1.      Houghton Mifflin brings this action for breaches of contractual

representations and warranties and certain covenants, and other wrongful conduct,

including securities fraud, common law fraud and breach of the implied covenant of good

faith and fair dealing.

        2.      This action arises out of Houghton Mifflin's purchase of Edusoft

("Edusoft" or the "Company"), pursuant to the Agreement and Plan of Merger, dated as

of November 26, 2003 (the "Merger Agreement"), from Edusoft's shareholders (the

"Shareholders") for approximately $38 million.  In order to induce plaintiff to complete

the transaction, defendants Jay Kimmelman ("Kimmelman") and Daniel Yates ("Yates")

concealed material facts relating to the Company, including without limitation, the

following:  (i) a competitor of Edusoft, EdSoft Software Corporation ("EdSoft"), was

marketing software using the "EdSoft" name and causing demonstrated customer

confusion regarding EdSoft and Edusoft; (ii) Yates and Kimmelman believed that EdSoft

was interfering and infringing the Company's intellectual property rights and engaging in

unfair and unlawful competition; and (iii) Kimmelman had received information that

EdSoft believed that Edusoft was interfering with and infringing its intellectual property

rights, and was preparing to demand that the Company stop using the EDUSOFT mark.

As a result of such omissions, the Company made several false representations and

breaches of warranties in the Merger Agreement.  Within only a few months following

the closing of the transaction on December 5, 2003 (the "Closing"), a lawsuit was

brought by EdSoft against Edusoft for trademark infringement seeking injunctive relief

and recovery of damages not less than $14 million (the "Trademark Litigation").   As set

forth more fully herein, Houghton Mifflin is entitled to recover from Kimmelman, Yates

and the Shareholders indemnity for the settlement of the Trademark Litigation and

attorneys' fees and expenses arising from the Trademark Litigation, and recover from

Kimmelman and Yates other damages sustained as a result their fraudulent and wrongful

conduct, including attorneys' fees and punitive damages.

## Parties

3.      Houghton Mifflin is a Massachusetts corporation with its principal place of business located at 222 Berkeley Street, Boston, Massachusetts.

4.      Upon information and belief, defendant Kimmelman is a citizen of California, and resides at 12A Sanchez Street, San Francisco, California.  Kimmelman, prior to the Closing, was a co-Chief Executive Officer of Edusoft, and owned 17.034% of Edusoft's stock.

5.      Upon information and belief, defendant Yates is a citizen of California, and resides at 1022 D Shotwell Street, San Francisco, California.  Yates, prior to the Closing, was a co-Chief Executive Officer of Edusoft, and owned 17.039% of Edusoft's stock.

6.      Plaintiff also names Kimmelman a defendant in this action in his capacity as the Shareholder Representative for the Shareholders pursuant to the Merger Agreement.

## Jurisdiction and Venue

7.      This Court has jurisdiction over the subject matter of this action under Section 27 of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78AA, and 28 U.S.C. §§1331, 1332, 1367 and 2201.  Additionally, the Merger Agreement provides at Section 10.1 that the parties agree to submit to the jurisdiction of this Court.

8.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. §1391(b).  In connection with the acts, conduct and other wrongs complaint of herein, the Defendants, directly and indirectly, used the means and

instrumentalities of interstate commerce and the United States mails.  Additionally, venue is proper under Section 10.1 of the Merger Agreement.

## Factual Background

**Kimmelman's and Yates' Knowledge
of Potential Intellectual Property Issues**

9.     Edusoft is an educational software company that licenses its assessment software to schools and school districts in the United States under the mark EDUSOFT®. Kimmelman and Yates founded Edusoft in 2000 and were the co-Chief Executive Officers of Edusoft through December 2004.

10.     As described below, at the time of the Merger Agreement and prior to the Closing, Kimmelman and Yates had specific knowledge of certain material issues relating to the EDUSOFT mark, which they concealed from Houghton Mifflin. Houghton Mifflin only discovered all of these facts in January 2005, as a result of discovery taken in the Trademark Litigation.

11.     In or about September 2002, Kimmelman became familiar with EdSoft, a competing company in the business of marketing curriculum and assessment software to school districts.  Kimmelman and Yates, as well as others at Edusoft, recognized that there was existing consumer confusion between Edusoft and EdSoft.

12.     In an exchange of emails on or about September 6, 2002, Kimmelman and Yates considered whether Edusoft should use another name in the Texas market, where EdSoft had a presence, or whether Edusoft would gain an advantage from the potential consumer confusion between Edusoft and EdSoft.  Kimmelman and Yates ultimately decided to use the EDUSOFT mark in the Texas market.

13.     Also during the September 6, 2002, exchange of emails, Kimmelman and Yates were advised by an Edusoft consultant and board member, Hadi Partovi, that EdSoft used www.ed-soft.com as its website address but that a third-party (unrelated to EdSoft) owned the domain name of www.edsoft.com. Kimmelman and Yates decided Edusoft should purchase the www.edsoft.com domain to gain an advantage over EdSoft and, in fact, Edusoft attempted to purchase that domain name.

14.     In October 2002, Kimmelman was advised by Partovi of a specific instance of consumer confusion in Texas between Edusoft and EdSoft.

15.     Kimmelman and Yates were keenly aware of the potential intellectual property issues between Edusoft and EdSoft, and decided to market Edusoft in Texas.

16.     In or about June 2003, Kimmelman told others at Edusoft that he believed that the intellectual property issues related to EdSoft were serious enough to deserve the attention of legal counsel.

17.     In July 2003, Kimmelman brought the consumer confusion between Edusoft and EdSoft to the attention of Edusoft's outside trademark legal counsel.

18.     In or about July 18, 2003, Kimmelman asked Yates whether he thought Edusoft should request that EdSoft change its name to avoid the apparent likelihood of and actual consumer confusion between the companies.

19.     In or about September 2003, Kimmelman and Edusoft learned from several clients in Texas about widespread actual confusion between it and EdSoft. Kimmelman also learned that EdSoft was contemplating action against Edusoft to prevent Edusoft from using the EDUSOFT mark.  Kimmelman again brought the

consumer confusion between Edusoft and EdSoft to the attention of Edusoft's outside

trademark legal counsel.

20.     In October 2003, an Edusoft employee noticed that at a recent Edusoft

conference, a conference participant had Edusoft notepads in an EdSoft canvas bag.  As a

result of this incident, on October 31, 2003, another Edusoft employee emailed

Kimmelman with a text message that "Edusoft needed to get EdSoft shut down."

**The Merger Agreement and**
**Edusoft's Contractual Representations and Warranties**

21.     Pursuant to Article 4 of the Merger Agreement (a true and accurate copy

of the Merger Agreement is attached hereto as Exhibit A), Edusoft made certain

representations and warranties "[i]n order to induce the Buyer to enter into and perform

this Agreement and to consummate the transactions," including without limitation, those

set forth below.

22.     The Company represented and warranted that it has not "interfered with,

infringed upon, misappropriated, or otherwise come into conflict with any Intellectual

Property of third parties" and has not "received any charge, complaint, claim, demand, or

notice alleging any such interference, infringement, misappropriation, or violation

(including any claim that the Company or any Predecessor must license or refrain from

using any Intellectual Property rights of any third party in connection with the conduct of

the Business or the use of any Technology or Works used in the Business)."  (Ex. A, §

4.12.2.)

23.     The Company represented and warranted that "[t]o the Company's

Knowledge, no third party has interfered with, infringed upon, misappropriated, or

otherwise come into conflict with any Company Technology or Works."  (Id.)

24.     With respect to all technology and works, including all intellectual property in all such technology and works, the Company represented and warranted that it "(i) possesses all right, title, and interest in . . . or has the right use such item" and "such item is not subject to any outstanding Government Order, and no Action is pending (or, to the Company's Knowledge, threatened) which challenges the legality, validity, enforceability, use or ownership of such item."  (Ex. A, § 4.12.4.)

25.     Edusoft further represented and warranted that its financial statements "present fairly the financial position of the Company and the results of operations of the Company as of the respective dates thereof and for the periods covered thereby."  It also represented and warranted that "[t]here is no contingent liability material to the Company that, as of the date thereof, is known by the Company and should be reflect on the Financial Statements or in the notes thereto that is not so reflected or disclosed."  In addition, with respect to the financial projections provided by Edusoft to Houghton Mifflin, it represented and warranted that they "were prepared in good faith and are based on assumptions the Company believes are reasonable."  (Ex. A, § 4.5.)

26.     The Company represented and warranted that, except for those items disclosed, "it is not aware that it has incurred any liability of any nature whatsoever, whether absolute, accrued, contingent, determined, determinable or otherwise, nor has there occurred any condition, situation or set of circumstances known to the Company that could reasonably be expected to result in such a liability, in each case other than liabilities in usual amounts incurred in the Ordinary Course of Business or reflected in the Interim Financial Statements."  (Ex. A, § 4.6.1.)

27.     The Company represented and warranted that, except for those matters expressly identified, "neither the Company nor the operation of the Business has been, or is, in violation of, or in default under, any law, statute, standard, ordinance, code, rule, regulation, judgment or decree, whether heretofore or now in effect . . . there are no pending (or, to the Company's knowledge, threatened) claims, investigations, lawsuits, administrative proceedings (including harassment or discrimination with respect to an employee) against the Company or any employee of the Company (in his or her capacity as an employee or as a result of his  or her conduct during the course of employment) or any basis therefore."  (Ex. A, § 4.9.)

28.     For purposes of the foregoing representations and warranties of Edusoft, "Company's Knowledge" is expressly defined to include "the actual knowledge, after reasonable investigation," of certain Company employees, including Kimmelman and Yates.  (Ex. A, § 1.2.)

29.     With respect to all of the representation and warranties, including without limitation those described above, Edusoft further represented and warranted that they "do not contain and will not contain any untrue statement of fact or omit to state any material fact necessary in order to make the statements and information contained therein not misleading." (Ex. A, § 4.24.)

30.     In addition to its representations and warranties as set forth above, Edusoft also expressly covenanted, pursuant to Section 8.4.2 of the Merger Agreement, that it "shall promptly notify Buyer upon becoming aware of any fact, occurrence or event" that could cause the representations and warranties not to be true.

**Falsity of Representations and Breach of Warranties
<u>And Kimmelman's and Yates' Intent to Deceive Plaintiff</u>**

31.     As set forth above, Kimmelman and Yates knew, as early as September 2002 – over a year prior to the Closing – that there were intellectual property issues arising from Edusoft's use of the name and mark EDUSOFT and EdSoft's use of the name and mark EDSOFT.  Kimmelman and Yates knew that Edusoft's and EdSoft's intellectual property rights were in conflict with one another and were aware of actual consumer confusion.

32.     By the summer of 2003, Kimmelman and Yates had received additional evidence of demonstrated confusion between Edusoft.  They were sufficiently concerned about this issue so as to contact Edusoft's trademark attorneys regarding the matter.

33.     During this same period of time – the summer of 2003 – Edusoft was in negotiations with Houghton Mifflin in connection with sale of the Company. Kimmelman and Yates were active participants in such negotiation.

34.     At no time during the negotiations did Kimmelman or Yates disclose the existence of EdSoft, that Edusoft believed that EdSoft was interfering with or infringing the EDUSOFT mark, that Edusoft was aware that there were instances of consumer confusion between it and EdSoft, or that EdSoft asserted that Edusoft was interfering with or infringing the EDSOFT mark.

35.     By September 2003, Kimmelman had knowledge that EdSoft intended to demand that Edusoft cease using the EDUSOFT mark and sought legal advice regarding demonstrated consumer confusion between Edusoft and EdSoft.  Kimmelman, however, concealed the same information from Houghton Mifflin.

36.     By the end of October – only a few weeks before signing the Merger Agreement – Kimmelman received additional evidence of confusion between Edusoft and EdSoft, and was advised by an Edusoft employee that "Edusoft needed to get EdSoft to shut down."

37.     At the time it entered the Merger Agreement, Kimmelman and Yates (i) were well aware of confusion between EdSoft and Edusoft, (ii) had, among themselves and others at the Company, contemplated taking some kind of action against EdSoft for interference with Edusoft's intellectual property rights and unfair competition, and (iii) had been advised that EdSoft was contemplating action against the Company for interference with EdSoft's intellectual property rights to prevent it from using the EDUSOFT mark.

38.     Kimmelman and Yates failed to disclose any of the foregoing material facts to Houghton Mifflin.  To the contrary, defendants made the representations and warranties set forth above, which they knew to be material, false and misleading.

39.     Defendants knew or should have known that Houghton Mifflin relied on such material and false and misleading statements in connection with the merger transaction.  The representations and warranties were made to induce Houghton Mifflin to enter the Merger Agreement.

40.     Kimmelman and Yates had the means and likely prospect of achieving concrete benefits by intentionally making material and false misleading statements in connection with the merger transaction, including receipt of an inflated price for their shares of Company stock.

41.     The evidence set forth above demonstrates Kimmelman's and Yates' intent to deceive plaintiff so as to consummate the Merger Agreement.

**<u>The Trademark Litigation</u>**

42.     On or about March 2, 2004, EdSoft filed a complaint against Edusoft in the United States District Court for the Northern District of Texas.  (A true and accurate copy of the complaint is attached hereto as Exhibit B.)  The complaint alleges, among other things, that Edusoft infringed on EdSoft's common law trademark rights in the mark EDSOFT.

43.     On or about March 15, 2004, Edusoft filed its own action against EdSoft, alleging causes of action for trademark infringement, dilution and unfair competition under federal and state law.  (A true and accurate copy of Edusoft's complaint is attached hereto as Exhibit C.)  On or about May 27, 2004, that action was consolidated with EdSoft's action against Edusoft.

44.     EdSoft alleged in its complaint that EdSoft had prior rights to the EDSOFT mark, and that Edusoft entered the Texas marketplace in December 2002, using the Edusoft name with the intention of confusing the public as to EdSoft and Edusoft. EdSoft further alleged that Edusoft's use of the term "Edusoft" involved false or misleading representations of fact, and caused actual confusion and mistake in the marketplace.  EdSoft also alleged under both federal and state trademark laws that Edusoft's use of the term "Edusoft" diluted the distinctive quality of the recognized EDSOFT mark.  Finally, EdSoft claimed that Edusoft's actions constituted unfair competition and caused to EdSoft a loss of business reputation, goodwill and lost profits.

45.     Edusoft counterclaimed against EdSoft for trademark infringement, false designation of origin and false representation, and common law unfair competition and dilution arising from the infringement of Edusoft's federally registered trademark EDUSOFT®.  Edusoft claimed that Edusoft had superior rights by virtue of its EDUSOFT® trademark, and that EdSoft's use of the EDSOFT mark resulted in actual confusion.

46.     In or about September 2004, for the purpose of discovery, Edusoft's counsel in the Trademark Litigation contacted Kimmelman to obtain relevant documents in his possession.  Kimmelman subsequently produced to counsel a minimal amount of material which he had hand selected.

47.     In or about December 2004, for the purpose of discovery, Houghton Mifflin requested that Kimmelman permit the Company's attorneys in the Trademark Litigation to image his lap top computer so that they could capture all of Kimmelman's documents and material relevant to the Trademark Litigation because it had become apparent that Kimmelman had numerous relevant documents that had not been produced to counsel.  Kimmelman, however, refused.

48.     In or about January 2005, Kimmelman provided the Company's attorneys in the Trademark Litigation with emails and documents relating to EdSoft and the EDUSOFT mark in his possession.

49.     During the discovery in the Trademark Litigation, Houghton Mifflin uncovered documents which clearly demonstrated that Kimmelman and Yates knew in advance of the signing of the Merger Agreement and the Closing that Edusoft's and EdSoft's intellectual property rights were in conflict with each other.

50.     In June 2005, the parties to the Trademark Litigation entered into a settlement agreement.  Pursuant to that settlement agreement, Houghton Mifflin agreed to make payment to EdSoft in the amount of $235,000 (the "Settlement Amount"), for the right to continue to use the EDUSOFT mark and to prohibit EdSoft from using the EDSOFT mark.

51.     In addition, to date, Houghton Mifflin has incurred approximately $675,000 in legal fees related to the Trademark Litigation.

**Bad Faith and Other Wrongful and
Unfair Conduct of Kimmelman and Yates**

52.     Section 9.1 of the Merger Agreement provides that Houghton Mifflin is entitled to indemnification from each Shareholder, jointly and severally, "from, against and in respect of any and all actions, liabilities, Governmental Orders, encumbrances, losses, damages . . . fees, costs (including costs of investigation, defense and enforcement of this Agreement), expenses or amounts paid in settlement (in each case, including reasonable attorneys' and experts fees and expenses), whether or not involving a Third Party Claim (collectively, "Losses")" incurred by the Company directly or indirectly relating to, among other things, the following:

(a)     "any fraud of any Shareholder, any fraud of any person (who is not a Shareholder) acting on behalf of the Company or any breach of, or inaccuracy in, any representation or warranty made by the Company in this Agreement or in any certificate delivered pursuant to this Agreement (in each case, as such representation or warranty would read if all qualifications as to materiality, including each reference to the defined term "Material Adverse Effect," were deleted therefrom);"

(b)      "any breach or violation of any covenant or agreement of the Company to the extent required to be performed or complied with by the Company prior to the Closing in or pursuant to this Agreement;" and

(c)      "any breach or violation of any covenant or agreement of any Shareholder or any of them (including under this Section 9) in or pursuant to this Agreement" (except each Shareholder shall be liable severally, solely as to itself).

53.      The parties, pursuant to Section 9.5 of the Merger Agreement, deposited a portion of the purchase price, $8 million, in an escrow account to secure Houghton Mifflin's indemnification rights (the "Escrow").  (A true and accurate copy of the Escrow Agreement is attached hereto as Exhibit D.)  From time to time, certain funds have been released from the Escrow, pursuant to the terms of the Escrow Agreement.

54.      Houghton Mifflin, at all times, apprised Kimmelman of the developments and progress of the Trademark Litigation.

55.      In February, Houghton Mifflin advised Kimmelman by letter that it was contemplating a claim for indemnity in connection with the Trademark Litigation.

56.      On or about May 31, 2005, Houghton Mifflin notified Kimmelman, through his counsel, that the parties in the Trademark Litigation had reached a settlement agreement, advised him of the terms of the settlement and requested consent from Kimmelman, as Shareholder Representative, to settle according to such terms.

57.      On May 31, 2005, Yates informed Houghton Mifflin that he and Kimmelman "had heard the good news about the EdSoft settlement today."

58.      On or about June 1, 2005, Kimmelman advised Houghton Mifflin that he would not consent to the settlement agreement.

14

59.     Kimmelman has unreasonably withheld consent to the settlement agreement in the Trademark Litigation for the sole purpose of avoiding his indemnity obligations pursuant to Article 9 of the Merger Agreement.

60.     Houghton Mifflin provided Kimmelman, as Shareholder Representative, with a formal written notice, dated June 2, 2005, of the indemnified claim in connection with the Trademark Litigation (the "Formal Notice").  (A true and accurate copy of the Formal Notice is attached hereto as Exhibit E.)

61.     Kimmelman's counsel notified Houghton Mifflin, as well as the Escrow Agent, that it intended to dispute Buyer's indemnified claim via letter, dated June 10, 2005.  (A true and accurate copy of such letter is attached hereto as Exhibit F.)

62.     Given Kimmelman's June 10 response, and in order to enforce its plain and unambiguous rights to indemnity under the Merger Agreement, Houghton Mifflin was left with no reasonable alternative but to bring this action for indemnification and other damages.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract – The Merger Agreement)

63.     Plaintiff realleges and incorporates by reference each of the foregoing allegations of this complaint.

64.     Defendants have indemnification liabilities under Article 9 of the Merger Agreement, and under common law, for their breaches of (i) the contractual representations and warranties in Sections 4.5, 4.6.1, 4.9, 4.12.2, 4.12.4 and 4.24 of the Merger Agreement, (ii) the covenant contained in Section 8.4.2 of the Merger Agreement and (iii) the indemnification provisions of Section 9.1 of the Merger Agreement.

65.     Each of the representations and warranties identified above were part of the bargain between Houghton Mifflin and Edusoft, and Houghton Mifflin expressly relied on such representations in entering into the Merger Agreement.

66.     Breach of each representation, warranty and covenant by defendants constitutes separate breaches of contract.

67.     As a direct and proximate result of each breach, plaintiff has suffered substantial damages.

**COUNT II**
**(Breach of the Implied Covenant of**
**Good Faith and Fair Dealing Against Kimmelman)**

68.     Plaintiff realleges and incorporates by reference each of the foregoing allegations in this complaint.

69.     The Merger Agreement and Escrow Agreement are governed by and construed in accordance with the domestic substantive laws of the state of New York.

70.     A covenant of good faith and fair dealing is implied in the Merger Agreement and Escrow Agreement.

71.     Kimmelman has, among other things, unreasonably and in bad faith withheld his consent of the settlement agreement in the Trademark Litigation, solely for the purpose of avoiding his obligations of indemnity pursuant to Article 9 of the Merger Agreement.  In doing so, Kimmelman has breached the implied covenant of good faith and fair dealing under the Merger Agreement and Escrow Agreement.

72.     As a direct and proximate result of this breach, plaintiff has suffered damages.

## COUNT III
**(Violation of Section 10b-5 of the Securities Exchange Act
Against Kimmelman and Yates)**

73.     Plaintiff realleges and incorporates by reference each of the foregoing allegations of this complaint.

74.     Kimmelman and Yates used the devices of interstate commerce and the United States mails to make untrue statements and omissions of material fact and to and to engage in a fraud and deceit upon plaintiff.

75.     Kimmelman and Yates intentionally and knowingly misrepresented to plaintiff that no third party interfered with or infringed upon the Company and omitted from plaintiff that they and others at the Company contemplated taking some action against EdSoft for trademark infringement.

76.     Kimmelman and Yates intentionally and knowingly misrepresented to plaintiff that the Company was not infringing or interfering with any intellectual property rights of any third party and omitted from plaintiff that they had knowledge that EdSoft intended to take some kind of action against the Company to prevent it from using the Edusoft trademark.

77.     Kimmelman and Yates intentionally and knowingly misrepresented to plaintiff that there was no threat of liability material to the Company and omitted from plaintiff that they had sought legal advice regarding the threat of liability to Edusoft.

78.     Kimmelman and Yates made the above-described misrepresentations and omissions with the intent of influencing or inducing plaintiff to enter into the Merger Agreement.

79.     Kimmelman and Yates intended that plaintiff would rely on these representations in entering into the Merger Agreement.

80.     Plaintiff relied justifiably and to its detriment on Kimmelman's and Yates' representations by, among other things, entering into the Merger Agreement.

81.     As a consequence of the wrongful acts and conduct of Kimmelman and Yates, plaintiff has incurred substantial direct, indirect, incidental and consequential losses and damages, as set forth above.

**COUNT IV**
**(Common Law Fraud and Fraudulent Inducement**
**Against Kimmelman and Yates)**

82.     Plaintiff realleges and incorporates by reference each of the foregoing allegations in this complaint.

83.     As described above, Kimmelman and Yates intentionally and knowingly made false and misleading representations to plaintiff with the intent of influencing or inducing plaintiff to enter into the Merger Agreement.

84.     Plaintiff relied justifiably and to its detriment on Kimmelman's and Yates' representations by, among other things, entering into the Merger Agreement.

85.     As a consequence of the wrongful acts and conduct of Kimmelman and Yates, plaintiff has incurred substantial direct, indirect, incidental and consequential losses and damages, as set forth above.

## COUNT V
**(Declaratory Judgment)**

86.     Plaintiff realleges and incorporates by reference each of the foregoing allegations in the complaint.

87.     Pursuant to 9.1 of the Merger Agreement, Houghton Mifflin is entitled to recover from the funds held in escrow the amount of its Losses in connection with its claims set forth herein, including the Settlement Amount, its attorneys' fees and costs in connection with the Trademark Litigation, and its attorneys' fees and costs in connection with this action.

88.     Accordingly, Houghton Mifflin requests that this Court enter a declaratory judgment, (i) for a declaration that Houghton Mifflin is entitled to a release of funds from the Escrow in the amount of its Losses, including the Settlement Amount, its attorneys' fees and costs in connection with the Trademark Litigation, and its attorneys' fees and costs in connection with this action and (ii) ordering that the Escrow Agent release to Houghton Mifflin funds from the Escrow in the amount of Houghton Mifflin's Losses, including the Settlement Amount, its attorneys' fees and costs in connection with the Trademark Litigation, and its attorneys' fees and costs in connection with this action.

**PRAYERS FOR RELIEF**

WHEREFORE, plaintiff prays that the Court grant the following relief:

A.      Award damages to plaintiff in an amount to be determined at trial;

B.      Award punitive damages to plaintiff;

C.      Award plaintiff attorneys' fees and expenses, and prejudgment interest in

at the highest rate permitted by law;

D.      Order that the Escrow Agent release to Houghton Mifflin funds from the

Escrow in the amount of its Losses, including the Settlement Amount, its

attorneys' fees and costs in connection with the Trademark Litigation, and

its attorneys' fees and costs in connection with this action; and

E.      Award such other and further legal or equitable relief in plaintiff's favor as

the Court determines to be just and proper.

Dated:  New York, New York

July 1, 2005

ROPES & GRAY LLP

By:   S\ Michele Cerezo-Natal

Jane E. Willis (JW5192)
Michele Cerezo-Natal (MC4497)
45 Rockefeller Plaza
New York, New York 10011
(212) 841-5700

Attorneys for Plaintiff